## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Lexon Insurance Company,

       Plaintiff,

   v.                             Civil Action No.

FutureNet Group, Inc., FutureNet Security
Solutions, LLC, FutureNet Security
Solutions d/b/a Smith & Wesson Security
Solutions, Perry Mehta, Dipika Mehta and
Capital Funding Solutions, Inc.

       Defendants.

---

Phillip G. Alber (P24802)
Omar J. Harb (P51306)
ALBER CRAFTON
Attorneys for Plaintiff
2301 W. Big Beaver, Suite 300
Troy, MI 48084
(248) 822-6190
palber@albercrafton.com
oharb@albercrafton.com

---

## **COMPLAINT**

Plaintiff, Lexon Insurance Company ("Lexon"), makes the following allegations against Defendants, FutureNet Group, Inc. ("FNG"), FutureNet Security Solutions, LLC, FutureNet Security Solution d/b/a Smith & Wesson Security Solutions ("S&W"), Perry Mehta, Dipika Mehta and Capital Funding Solutions, Inc. ("Capital Funding"):



01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

## PARTIES

1.     Lexon is a Texas corporation with its principal place of business in Nashville, Tennessee.

2.     Defendant FNG is a Michigan corporation with a principal place of business in Detroit, Michigan and a registered address of 12801 Auburn St., Detroit, Michigan 48223.

3.     FNSS is a Michigan limited liability company with its principal place of business in Franklin, Tennessee, and a registered address of 12801 Auburn St., Detroit, Michigan 48223.  On information and belief, the sole Member of FNSS is FNG, a Michigan corporation with a principal place of business in Detroit, Michigan.

4.     S&W is a Michigan limited liability company with its principal place of business in Franklin, Tennessee, and a registered address of 12801 Auburn St., Detroit, Michigan 48223.  On information and belief, the sole Member of S&W is FNG, a Michigan corporation with a principal place of business in Detroit, Michigan.

5.     Perry Mehta is, upon information and belief, a Michigan citizen domiciled in the State of Michigan, residing at 43169 Ashbury Drive, Novi, Michigan 48375.



ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

6.    Dipika Mehta is, upon information and belief, a Michigan citizen domiciled in the State of Michigan, residing at 43169 Ashbury Drive, Novi, Michigan 48375.

7.    Capital Funding is a Florida corporation with a principal place of business at 2021 Tyler Street, Suite 208 Hollywood, Florida, 33020.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the Plaintiff and all the Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to Lexon's claims occurred within this District.   Further, the Defendants are actively conducting business in this District.

## THE GENERAL AGREEMENTS OF INDEMNITY

10.    FNG is a construction company located in Detroit, Michigan.

11.    FNSS installs security systems and other security-related products and is located in Detroit, Michigan.

12.    Starting in 2010, FNG and FNSS were awarded multiple contracts with federal and state governmental agencies across several states.   To fulfill their



ALBER
RAFTON
A T T O R N E Y S
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

contractual obligations, the Indemnitors (as defined below) requested that Lexon execute bonds on their behalf.   A chart listing the bonds executed by Lexon on behalf of one or more of the Indemnitors is attached as **Exhibit A** (hereinafter collectively, the "Bonds").

13.     Since 2010, Lexon has issued at least 84 Bonds on behalf of one or more of the Indemnitors with a collective penal sum of $69,911,351.67.

14.     At or about the time the Bonds were issued, as partial consideration for the issuance of the Bonds, FNG, FNSS, S&W, Perry Mehta and Dipika Mehta (collectively, the "Indemnitors") executed one or more General Agreement of Indemnity in favor of Lexon.   There are a total of three General Agreements of Indemnity dated July 14, 2010, May 1, 2012 and December 18, 2013, respectively (collectively, the "GAIs").   A copy of each GAI is attached hereto as **Exhibit B.**

15.     Section 2 of each of the GAIs[1] states:

> The Indemnitors [Defendants] will indemnify and save the Company [Lexon] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees for attorneys, whether on salary, retainer or otherwise, and the expense of procuring or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement.   In the event of payment by the Company, the Indemnitors agree to

ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

---

[1] The 2013 GAI contains similar (but not identical) language at paragraph 2. (See Exhibit B).

accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the indemnitor's liability therefore to the Company.

16.   Section 5 of the December 18, 2013 GAI includes a "Trust Funds" provision which states:

> TRUST FUNDS, The Indemnitors agree and hereby expressly declare that all funds due or to become due under any contract, whether or not in the possession of any of the Indemnitors, or another, shall be held in trust as trust funds by the Indemnitors, for the benefit and payment of all persons to whom the Indemnitors incur obligations in the performance of such contract covered by the Bond(s) and/or for the benefit of, payment to, or reimbursement of the Surety for any liability, loss, or expense the Surety may incur under the Bond (s) or in enforcing this Agreement.  If the Surety discharges any such obligations, it shall be entitled to assert the claim of such person to the trust funds.  It is the express intention of the Indemnitors herein to fully comply with any legal requirements for the establishment of a valid and enforceable trust for the trust res consisting of all present end future bonded contract funds, for the benefit of the Surety and all persons to whom the Indemnitors incur obligations in the performance of bonded contracts. Said trust or trusts shall terminate on the payment by the Indemnitors of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of twenty years from the date hereof, whichever shall occur first. Notwithstanding anything to the contrary herein above, this section may be implemented in any manner provided at law or in equity.

17.   Each GAI also includes an "Assignment" provision whereby, in the event of a default, the Indemnitors assigned to Lexon as collateral all monies due, or to become due, under the contracts covered by the Bonds.  That includes all


ALBER
RAFTON
A T T O R N E Y S
01 W. Big Beaver
Suite 300
Troy, MI 48084
t: 248-822-6190
F: 248-822-6191

payments, progress payments, deferred payments, retained percentages, compensation for extra work and proceeds from damage claims.

18.    To date, Lexon has received and continues to receive a substantial number of claims against the Bonds (the "Claims").

19.    As of the week ending January 13, 2016, Lexon has paid at least $3,568,373.32 to resolve the Claims.

20.    As of the week ending January 13, 2016, Lexon has pending unpaid Claims of $1,532,783.25, with additional Claims expected.

21.    Despite due demand, the Indemnitors have failed to satisfactorily indemnify or hold Lexon harmless from all of the Claims received to date and have otherwise failed to fulfill their obligations under the GAIs.

22.    As a result, Lexon has and will continue to incur liability, costs, charges, and expenses, including attorneys' fees, in direct consequence of its issuance of the Bonds.

23.    By reason of the foregoing, the Indemnitors are in material breach of the GAIs.

## THE ESCROW AGREEMENTS

24.    In 2014, as a condition to issuing certain high value Bonds, Lexon required a "funds control" arrangement. Under a "funds control" arrangement, an escrow agent is appointed to collect the contract funds paid by obligees on a


ALBER
CRAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

project. The escrow agent then disburses those funds to the project suppliers and sub-contractors. A funds-control arrangement is therefore designed to minimize possible claims for non-payment by suppliers and sub-contractors and otherwise carry out the terms of the GAIs.

25.     In 2014 and 2015, Lexon, FNG and Contract Operations Planning, LLC ("COP") entered into eight separate Escrow Agreements[2], copies of which are collectively attached as **Exhibit C.**[3]

26.     The 2014 Escrow Agreements required that all payments by obligees on certain FNG projects bonded by Lexon be deposited in an escrow account controlled by COP. COP would then disburse the funds to the FNG suppliers and subcontractors.

27.     On or about September 21, 2015, Lexon, FNG and COP executed an additional Escrow Agreement, a copy of which is attached as **Exhibit D.**

28.     The September 2015 Escrow Agreement expanded the scope of the funds control arrangement to include contract funds on all FNG projects bonded by Lexon (hereinafter, the "FNG Contract Funds").

---

[2] Each Escrow Agreement includes a "Contractor's Letter Agreement" and "Escrow Agreement". For ease of reference, each "Contractor's Letter Agreement" and "Escrow Agreement" are collectively referred to herein as "Escrow Agreement."

[3] The Escrow Agreements executed in 2014 pertained to the following eight (8) projects: DISA upgrade/pump replacement at DSCC (Bond #1113064); Phase III Smale Riverfront Park (Bond #1113063); Renovations of Maint Union and Logistics Facility b-670 (Bond #1113062); Renovations to Building 200A (Bond#1113059); Renovations to Building 229 basement and Room 300 (Bond#1113058); Construction of Lee Road Widening (Bond #111968); p-382 Front Gate AT/FP improvements (Bond #1099729); and McConnell AFP Lift Station (Bond #1118634).

ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

29.     For ease of reference, the Escrow Agreements executed in 2014 and 2015 are collectively referred to herein as the "Escrow Agreement."

30.     Paragraphs 2 and 3 of each Escrow Agreement state the following:

2) <u>All funds payable under the Contract shall hereinafter be delivered to the ESCROWEE and deposited into a special escrow account to accommodate the purpose hereunder.</u>   As such, PRINCIPAL hereby authorizes and directs ESCROWEE'S bank to accept for deposit any checks made payable to PRINCIPAL and presented to ESCROWEE in accordance herewith. ESCROWEE'S bank shall be entitled to rely on the above directive of PRINCIPAL until such time as PRINCIPAL and ESCROWEE provide ESCROWEE'S bank with written notice regarding the revocation of the authorization and directions stated herein. (Emphasis added).

3(a) The ESCROWEE agrees that upon receipt of the contract funds from time to time it will deposit same in a special account. The ESCROWEE <u>will open and maintain a separate bank account</u> for this Escrow and the PRINCIPAL is entitled to all interest earned on this account, which will be paid to the PRINCIPAL upon closure of the escrow account. (Emphasis in original).

(b) After contract funds deposited by ESCROWEE have been cleared for use by the depository bank, ESCROWEE shall, after reimbursement for all costs and fees of the Escrow defined in 6 below, disburse all or a portion of such funds in accordance with the PRINCIPAL'S sworn statement listing the names of the suppliers and subcontractors who are entitled to receive payment and the amounts each may be due, which sworn statement shall be accompanied by delivery [sic] receipts, invoices, or other like documentation of indebtedness; and ESCROWEE shall make such disbursements as payments to such suppliers and subcontractors, sent to PRINCIPAL for distribution, unless otherwise directed by PRINCIPAL. (See Exhibits C and D).

31.     Under the Escrow Agreement, FNG expressly agreed to provide Lexon and COP full access to all payment records.   Specifically, the Escrow

ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

Agreement states, **"[a]t all times, FutureNet Group Inc. agrees to provide COP with full access to the government's billing/payment systems and will not change any passwords/user ID numbers without providing prior written notice of any said changes"** (See Exhibits C and D at Contractor's Letter Agreement; emphasis in original).

32.     The Escrow Agreement also provides that an intentional improper distribution of FNG Contract Funds constitutes a breach under the GAIs: "If FutureNet Group, Inc. (Contractor) intentionally distributes funds received directly from [obligee], this action shall be deemed a jeopardy event under the General Agreement of Indemnity provided to Lexon." (See Exhibits C and D at Contractor's Letter Agreement, emphasis in original).

## THE DIVERSION OF FNG CONTRACT FUNDS

33.     Upon information and belief, despite the Escrow Agreement, FNG assigned all FNG Contract Funds due, or to become due, on all Lexon bonded projects to its factoring company, Capital Funding.[4]

34.     Upon information and belief, despite the Escrow Agreement, Capital Funding has collected, and continues to collect all, all FNG Contract Funds.

---

[4] Because it provides services governmental agencies, FutureNet has been assigned a "Commercial and Government Agency Code", commonly known as a "CAGE Code." A vendor's CAGE Code provides the various government agencies with information about that vendor, including a bank account number to which the government agencies will deliver payment.



ALBER
RAFTON
P R O P E R T Y
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

35.     Upon information and belief, upon receipt, Capital Funding retains a portion of the FNG Contract Funds.  Capital Funding then transfers the balance of any remaining FNG Contract Funds to FNG.

36.     Upon receipt of the remaining FNG Contract Funds from Capital Funding, FNG then diverts additional sums of the FNG Contract Funds to unknown persons or entities in violation of the GAI and Escrow Agreements.

37.     For example, upon information and belief, on or about December 2015, the United States Army Corps of Engineers (the obligee for the "Construction of Lee Road Widening" project bonded by Lexon) released to Capital Funding the sum of $625,810.20.  Upon information and belief, instead of re-directing said funds to COP as required by the Escrow Agreement, Capital Funding and FNG diverted that $625,810.20 to an unknown entity or person in violation of the GAI and Escrow Agreements.

38.     Similarly, upon information and belief, in approximately September 2015, the Army Corps of Engineers released to Capital Funding $110,293.13 on the Phase III Smale Riverfront Park project bonded by Lexon.  Upon information and belief, instead of re-directing said funds to COP as required by the Escrow Agreement, Capital Funding and FNG diverted that $110,293.13 to an unknown entity or person in violation of the GAI and Escrow Agreements.



ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

39.     Based on information received from FNG on February 1, 2016, FNG shall be imminently receiving a $295,000 payment on a Lexon-bonded project. Without an order from this Court enjoining such payment, those contract funds may be used for purposes contrary to the terms of the GAIs and the escrow arrangement of the parties.

40.     To date, despite request, FNG refuses to provide Lexon and/or COP with full access to the government's billing/payment systems for the bonded projects as required by the Escrow Agreement.

## THE DIVERSION OF FNSS CONTRACT FUNDS

41.     Upon information and belief, FNSS assigned all Contract Funds due, or to become due, on all FNSS projects bonded by Lexon to Capital Funding (hereinafter, "FNSS Contract Funds").[5]

42.     Upon information and belief, Capital Funding has collected, and continues to collect all, all FNSS Contract Funds.

43.     Upon information and belief, upon receipt, Capital Funding retains a portion of the FNSS Contract Funds. Capital Funding then transfers the balance of any remaining FNSS Contract Funds to FNSS.

---

[5] Unlike the FNG projects, there is no funds protection arrangement in place for Lexon bonded FNSS projects.

44.     Upon information and belief, upon receipt of the remaining FNSS Contract Funds from Capital Funding, FNSS then diverts additional sums of the FNSS Contract Funds to unknown persons or entities in violation of the GAI.

## COUNT I

### (As against Indemnitors, Indemnification)

45.     Lexon repeats and realleges the allegations contained in paragraphs 1 through 44 of the Complaint as if fully set forth herein.

46.     Lexon has fully satisfied any and all obligations under the GAIs.

47.     Pursuant to the express terms and conditions of the GAIs, Lexon is entitled to be indemnified by the Indemnitors for all losses sustained under the Bonds.

48.     Specifically, the Indemnitors are obligated, among other things, to indemnify and save Lexon harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense, including attorneys' fees, in connection with the Claims and as a result of executing the Bonds.

49.     To date, Lexon has incurred at least $3,568,373.32 in damages, and will continue to incur liability, costs, charges and expenses, including attorneys' fees, as a result of its issuance of the Bonds and the Claims received.

50.     By reason of the foregoing, Lexon has suffered damages in an amount to be determined at trial, but believed to exceed $3,568,373.32.



ALBER RAFTON
PROPERTY
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

51.     By reason of the foregoing, Lexon is entitled to a judgment in its favor against the Indemnitors, jointly and severally, in an amount to be determined at trial, but believed to exceed $3,568,373.32.

## COUNT II

### (As against FNG, breach of Escrow Agreement)

52.     Lexon repeats and realleges the allegations contained in paragraphs 1 through 51 of the Complaint as if fully set forth herein.

53.     Lexon has fully satisfied any and all obligations it has under each and every Escrow Agreement.

54.     FNG has breached the Escrow Agreement by assigning FNG Contract Funds to Capital Funding.

55.     FNG has breached the Escrow Agreement by collecting FNG Contract Funds and diverting said FNG Contract Funds to unknown persons or entities for non-trust purposes.

56.     FNG as breached each Escrow Agreement by refusing and failing to provide Lexon and/or COP with full access to the government's billing/payment systems for all Lexon bonded projects.

57.     By reason of the foregoing, Lexon has suffered damages in an amount to be determined at trial.



ALBER
RAFTON
A T T O R N E Y S
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

## COUNT III

### (As against Indemnitors, Access to Books and Records)

58.     Lexon repeats and realleges the allegations contained in paragraphs 1 through 57 of the Complaint as if fully set forth herein.

59.     The GAIs provide that Lexon shall be entitled to review the books, records and accounts of the Indemnitors. Specifically, Paragraph 17 of the GAIs[6] provides:

> At any time, and until such time as the liability of the Company under any and all said Bonds is terminated, the Company shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Company is hereby authorized to furnish the Company any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts. (See Exhibit B at paragraph 17).

60.     This Court should require the specific performance of this provision in the GAIs and order that the Indemnitors immediately provide Lexon with access to their books, records, and accounts.



01 W. Big Beaver
Suite 300
Troy, MI 48084
t: 248-822-6190
f: 248-822-6191

---

[6] The 2013 GAI contains similar (but not identical) language at paragraph 16. (See Exhibit B)

## COUNT IV

### (As against all Defendants, Breach of Trust)

61.    Lexon repeats and realleges the allegations contained in paragraphs 1 through 60 of the Complaint as if fully set forth herein.

62.    The FNG/FNSS Contract Funds are subject to a trust pursuant to Section of the GAI, and not the property of FNG, FNSS and/or Capital Funding.

63.    Lexon has a first priority right to the FNG/FNSS Contract Funds for payment of claims by unpaid subcontractors and material suppliers, and for its payment of the costs of completing the work on said projects, and other costs.

64.    Defendants knew, or should have known, that the FNG/FNSS Contract Funds were subject to a trust and not the property of FNG, FNSS and/or Capital Funding.

65.    Upon information and belief, the FNG/FNSS Contract Funds received by FNG, FNSS and/or Capital Funding were unlawfully retained or diverted to unknown persons or entities in violation of the GAI and Escrow Agreements.

66.    Upon information and belief, the Defendants have knowingly caused or participated in the improper retention or diversion of the FNG/FNSS Contract Funds in violation of the GAI and Escrow Agreements.

67.    As a result, the Defendants have caused Lexon to suffer damages in an amount to be determined at trial.



ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

## COUNT V

### (Declaratory Judgment – Invalidity of Assignment to Capital Funding)

68.     Lexon repeats and realleges the allegations contained in paragraphs 1 through 67 of the Complaint as if fully set forth herein.

69.     Upon information and belief, Capital Funding's alleged right to receive the FNG/FNSS Contract Funds is predicated on assignments of such amounts from FNG and FNSS.

70.     Even to the extent such assignments are not otherwise prohibited by the federal Assignment of Claims Act, 31 USC 3727 and 41 USC 6305, such assignments are invalid pursuant to  41 USC 6305(b)(6), 31 USC 3727(c)(3) and FAR 23.802(e) because Capital Funding failed to provide notice of such assignment to Lexon.

71.     Based on the failure to comply with the relevant provisions of federal statutes and regulations relating to the assignment of claims, any assignments upon which Capital Funding relies are invalid and do not serve to create any rights in the FNG/FNSS Contract Funds, and this Court should issue a declaratory judgment to that effect.



ALBER
RAFTON
A T T O R N E Y S
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

## COUNT VI

### (Declaratory Judgment – Lexon's Priority to Contract Funds)

72.    Lexon repeats and realleges the allegations contained in paragraphs 1 through 71 of the Complaint as if fully set forth herein.

73.    Until a project has been completed and all subcontractors and material suppliers on the project have been paid, any funds received by FNG/FNSS on the project have not been earned, are not the property of FNG/FNSS and must be held for proper trust purposes.  Succinctly, they are to be held in trust to pay for completion of the project and to pay the subcontractors and suppliers who worked on the project.

74.    To the extent Lexon has expended funds to complete a project or to pay subcontractors and suppliers it is equitably subrogated to their respective rights to receive the Contract Funds for payment and/or reimbursement of claims by unpaid subcontractors and material suppliers, and for its payment of the costs of completing the work on said projects, and other costs.

75.    As payment bond surety, upon payment of the claims of suppliers and subcontractors, Lexon has become equitably subrogated to the rights of the suppliers and subcontractors, as well as to all rights of the United States (as owner of the projects) and FNG/FNSS (as contractor), to the Contract Funds.



ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
t: 248-822-6190
f: 248-822-6191

76.     Based on those equitable rights to which Lexon is subrogated, Lexon has priority to the FNG/FNSS Contract Funds over all other parties, including Capital Funding.

77.     Lexon is entitled to receive all FNG/FNSS Contract Funds, whether previously paid the Capital Funding or FNG/FNSS, or to be paid in the future, and this Court should issue a declaratory judgment to that effect.

## COUNT VII

### (As against FNG, FNSS and Capital Funding, Injunction)

78.     Lexon repeats and realleges the allegations contained in paragraphs 1 through 77 of the Complaint as if fully set forth herein.

79.     Capital Funding and FNG/FNSS continue to unlawfully collect and divert FNG and FNSS Contract Funds to unknown persons or entities in violation of the GAI and Escrow Agreements, and in contravention of Lexon's rights to such amounts.

80.     Despite repeated demands, FNG continues its refusal to provide Lexon and COP with full access to the government's billing/payment systems for Lexon bonded projects.

81.     Unless and until enjoined by this Court, the unlawful conduct by FNG, FNSS and Capital Funding will cause severe and irreparable injury to Lexon.

82.     Lexon has no adequate remedy at law.



ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

83.  As a result, Lexon seeks an Order:

a)  Enjoining Capital Funding, FNG and FNSS from collecting, diverting or otherwise moving any FNG/FNSS Contract Funds received by, now in the hands of, or to be received by, Capital Funding, FNG or FNSS;

b)  Requiring the immediate transfer of all FNG/FNSS Contract Funds received by, now in the hands of, or to be received by, Capital Funding, FNG or FNSS into an escrow account controlled by COP;

c)  Requiring FNG and FNSS to each immediately provide Lexon and COP with a full and complete accounting of all funds received by, now in the hands of, or to be received by, FNG, FNSS and/or Capital Funding for any Lexon bonded project; and

d)  Requiring each Indemnitors to immediately provide Lexon with full and complete access to their books, records and accounts.

## **PRAYER FOR RELIEF**

Plaintiff Lexon Insurance Company respectfully requests this Court enter judgment in its favor and against the Defendants, granting the following relief:

A.  On its First Count, an entry of judgment in Lexon's favor and against the Defendants, jointly and severally, in an amount to be determined at trial but in excess of $3,568,373.32, plus interest, costs, disbursements and attorneys' fees, and for such additional liability costs, charges and expenses, including attorneys' fees, as may be incurred by Lexon in the future.


01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

B.    On its Second Count, damages in an amount to be determined at trial.

C.    On its Third Count, an Order requiring the Indemnitors to provide full and complete access to their books, records and accounts.

D.    On its Fourth Count, damages in an amount to be determined at trial.

E.    On its Fifth Count, an Order declaring that any assignments of Contract Funds to Capital Funding on any of the projects for which Lexon issued Bonds are invalid and without any force and effect.

F.    On its Sixth Count, an Order declaring that Lexon has first priority to all Contract Funds on any of the projects for which Lexon issued Bonds.

G.    On its Seventh Count, an Order: i) enjoining Capital Funding , FNG, and FNSS from collecting, diverting or otherwise moving any FNG/FNSS Contract Funds received by, now in the hands of, or to be received by, Capital Funding, FNG or FNSS; ii) requiring the immediate transfer of all FNG/FNSS Contract Funds received by, now in the hands of, or to be received by, Capital Funding, FNG or FNSS into the escrow account controlled by COP; iii) requiring FNG and FNSS to each immediately provide Lexon and COP with a full and complete accounting of all funds received by, now in the hands of, or to be received by, FNG, FNSS and/or Capital Funding for any Lexon bonded project; and iv,) requiring each Indemnitor to immediately provide Lexon with full and complete access to their books, records and accounts.



ALBER
RAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191

H.    Any other and further relief that this Court deems just and proper.

**ALBER CRAFTON**

By:    /s/Phillip G. Alber

    Phillip G. Alber (P24802)
    Omar J. Harb (P51306)
    ALBER CRAFTON
    Attorneys for Plaintiff
    2301 West Big Beaver Road, Suite 300
    Troy, Michigan 48084
    (248) 822-6190
    palber@albercrafton.com
    oharb@albercrafton.com

Dated: February 2, 2016

F:\DOCS\5220\001\COMPLAIN\00263004.DOCX



ALBER
CRAFTON
01 W. Big Beaver
Suite 300
Troy, MI 48084
T: 248-822-6190
F: 248-822-6191